IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OCTAVIUS CLARK, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 23-553 |
| | ) Judge Nora Barry Fischer |
| JASON MCDONOUGH, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

**I. Introduction**

In this claimed excessive force case, the parties dispute whether a confidential Resistance and Control Policy ("R&C Policy") maintained by a non-party, the Pennsylvania Board of Probation and Parole ("PBPP"), should be disclosed only to Plaintiff's counsel pursuant to a confidentiality agreement and an "Attorney's Eyes Only" designation. Presently before the Court is Defendant Jason McDonough's Motion for Protective Order, (Docket No. 43), and Plaintiff Octavius Clark's opposition thereto, (Docket No. 45). This dispute has been the subject of exhaustive briefing and various evidentiary submissions from the parties. (Docket Nos. 47; 49; 51–53; 55). On March 22, 2024, the Court heard oral argument from counsel, the official transcript of which has been produced and reviewed by the Court. (Docket No. 54). Following oral argument, the Court ordered the parties to submit several documents to develop a full record of the proceeding, including the confidentiality agreement Defendant proposed to Plaintiff and

the policy in question which the Court reviewed *in camera*.[1]  (Docket Nos. 50–55).  After carefully considering the parties' positions, in light of the relevant standards, and for the following reasons, Defendant's motion is GRANTED in part, and DENIED in part.  Said motion is granted to the extent that Defendant will be directed to produce a redacted version of the R&C Policy consistent with the Court's accompanying Order.  As such, Plaintiff will be permitted to access the policy subject to the restrictions outlined herein.  However, Defendant's motion is denied insofar as he seeks a blanket "Attorney's Eyes Only" designation.

**II. Background**

Since the Court writes primarily for the parties and they are familiar with the facts of this action, it focuses on those necessary to resolve the instant motion.

Plaintiff alleges that in May 2021 he was subject to excessive force when he was arrested on a parole violation warrant.  (Docket No. 1).  Specifically, Plaintiff alleges that the arresting officers followed him into his home, drew guns and tasers, threw him against a glass wall, then took him outside, and pushed him to the ground and dragged him face-down along the concrete while handcuffed.  (*Id*. at ¶¶ 10–11).  The law enforcement officers involved in his arrest included the only remaining defendant, Jason McDonough, who was a parole agent with the PBPP at that time, and Officer Evan Nan of the City of Sharon Police Department.  (Docket No. 15 at ¶ 8).  Defendant McDonough has since resigned from his position.  (Docket Nos. 55-3 at 11:18–23; 54 at 7:13–14).  The 2016 version of the R&C Policy, which was in effect at the time

---

[1] Along with the documents outlined above, the Court ordered the parties to produce Plaintiff's requests for production and Defendant's responses thereto, Plaintiff's parole agreement, the transcript excerpts from Defendant McDonough's deposition where the R&C Policy was discussed, and citations to the relevant caselaw referenced at oral argument.  (Docket Nos. 51; 55).

of Defendant's arrest, has been designated as confidential by the PBPP. (Docket Nos. 49-1 at ¶ 25; 54 at 14:9–11).

Procedurally, a Case Management Conference was held on August 3, 2023, during which counsel for the parties indicated to the Court that a confidentiality order may be necessary in this matter. (Docket No. 22). The Court then entered its Case Management Order which set the close of fact discovery for January 2, 2024, and separately ordered that ADR would be deferred until the conclusion of fact discovery. (Docket Nos. 24 at ¶ 2; 26). During the ensuing discovery period, the parties exchanged initial disclosures, written discovery, and deposed several witnesses including Plaintiff, Defendant McDonough, Officer Nan, and a Rule 30(b)(6) deponent for the City of Sharon Police Department. (Docket Nos. 30; 34). Plaintiff did not seek a Rule 30(b)(6) deposition of the PBPP and counsel confirmed that Plaintiff never requested the R&C Policy from the PBPP through discovery or other means, including under Pennsylvania's Right-to-Know-Law ("RTKL") or the Freedom of Information Act. (Docket No. 54 at 6:5–10). Pertinent to this dispute, at no time did Defendant seek a protective order for his deposition or any portion thereof. However, while testifying about his training and experience at his deposition, Defendant provided general information on the PBPP's standards and procedures for the use of force and his counsel did not raise any objections thereto. (Docket No. 55-3 at 15:8–27:24).

A few days before the Court-ordered discovery deadline, on December 29, 2023, Plaintiff served his first set of interrogatories and requests for production on Defendant. (Docket No. 55-6). Despite the approaching deadline, the written discovery and document requests demanded responses within the 30-day period required by the Federal Rules of Civil Procedure. *See* Fed. Civ. P. 33(b)(2) and 34(b)(2). Several interrogatories sought information on the PBPP's "use of

3

force policy," and Plaintiff's Rule 34 document requests included one for the policy itself. (Docket No. 55-2 at 5, 8–10, 30, 34).  At some point, counsel for the parties conferred and informally agreed to extend Defendant's deadline to respond to the December 29, 2023 requests. (Docket No. 55-6).  However, they did not notify the Court about this agreement.  (*Id.*).

On January 4, 2024, Defendant filed an uncontested motion for a 30-day extension of the discovery period citing as his basis the need to depose a witness whom the parties were unable to contact during the first discovery period.  (Docket No. 37).  The Court granted Defendant's motion and the discovery deadline was reset for February 5, 2024.  (Docket No. 38).  The Court held a telephone post-fact discovery status conference on February 6, 2024, during which counsel advised that, aside from a few documents awaiting production by Defendant, fact discovery was now complete.  (Docket No. 39).  In this regard, defense counsel explained that she contacted the PBPP to obtain certain documents in its possession and expected to receive the responsive documents from the PBPP within the week, after which she would produce them to Plaintiff.  (*Id.*).  Because counsel stated that they neither anticipated a discovery dispute nor needed another enlargement of the discovery period, the Court directed the parties to file a Stipulation Selecting ADR Process.  (Docket No. 39).  Once the parties filed their stipulation, the Court entered an ADR Order referring the case to an Early Neutral Evaluation with retired U.S. Magistrate Judge Lisa Pupo Lenihan.  (Docket Nos. 41–42).

Upon obtaining the PBPP documents, defense counsel prepared and sent to Plaintiff's counsel a draft confidentiality agreement listing the R&C Policy as one of the documents subject to it. (Docket No. 43 at ¶¶ 4–5).  The terms included, in relevant part:

> Counsel for Plaintiff agrees and solemnly undertakes not to disclose the contents of any documents produced by the Defendant in in [sic] this action and identified as "**Confidential – Attorneys' Eyes Only**," including, but not limited to:

> …
> 04 03 08 Resistance and Control Jan. 2016
> …
> All such disclosures should not be made to Plaintiff in any fashion or manner including by inspection, review of original or later copies, by digest or summary, either orally or in writing, subject to the following conditions:
>
> Counsel for Plaintiff may dispute any designations of "**Confidential – Attorneys' Eyes Only**" and, if necessary, seek judicial intervention to resolve any such disputes. Counsel shall attempt to resolve any dispute prior to seeking judicial intervention.
> ...
> In the event counsel for Plaintiff otherwise desires to make such a disclosure to Plaintiff they shall first notify counsel for the Defendant in writing describing the document(s) and/or portions(s) thereof, and afford counsel until a specified date (for no less than a period of ten calendar days) to file a motion for a protective order with the court preventing, limiting or regulating such disclosure to Plaintiff.
> ...
> The Parties also agree that nothing in this Agreement shall preclude the use at mediation or trial of any document provided under this Agreement, provided the document is otherwise relevant, material, and competent to any issue to be resolved at mediation or trial. Further, at trial, either Party may request that any document provided under this Agreement be admitted under seal.

(Docket No. 55-7 at 1–2). Plaintiff's counsel refused to sign the proposed confidentiality agreement. (Docket No. 43 at ¶¶ 4–5). Defendant then served his discovery responses and objections on February 16, 2024. (Docket No. 55-2). In part, Defendant directed Plaintiff to "contact the [PBPP] for a copy of their use of force policies." (*Id*. at 14, 17, 19). At the same time, Defendant objected to the requests seeking production of the R&C Policy as being "confidential [PBPP] documents" which "cannot be released without a confidentiality agreement." (*Id*. at 38, 43).

Defendant subsequently moved for an order designating the R&C Policy as "Attorney's Eyes Only" ("AEO") on February 20, 2024. (Docket No. 43). During oral argument on March 22, 2024, Plaintiff's counsel advised the Court that Plaintiff was incarcerated at the Mercer County Jail on charges unrelated to this case. (Docket No. 54 at 26:21–22). But, the Inmate and

Parolee Locator on the Pennsylvania Department of Corrections' website reports that Plaintiff has since been released from custody and is currently on parole. *See* Pa. Inmate/Parolee Locator, available at: https://inmatelocator.cor.pa.gov/#/ (last visited May 20, 2024).[2]  The Court also pointed out at oral argument that its research found that the Pennsylvania Citizen Law Enforcement Advisory and Review ("CLEAR") Commission published two reports online in October and May 2022 which appeared to quote large portions of the R&C Policy. (Docket No. 54 at 24:8–14.). Counsel for the DOC acknowledged that these reports made such references but clarified that the entire R&C Policy was not disclosed therein. (*Id*. at 24:25–25:1–2.). Lastly, the Court indicated that since fact discovery is closed, the use of the R&C Policy, if any, would be as an exhibit to a summary judgment motion or at trial. (*Id*. at 22:15–17.). That being so, counsel for Defendant indicated that she would no longer seek an AEO designation as she may use the R&C Policy in support of their position. (*Id*. at 22:17–22.).

The Court now turns to its discussion starting with the applicable standards.

### III. Discussion

   a. *Applicable Law*

District courts retain "broad discretion" in managing discovery, *Tuno v. NWC Warranty Corp.*, 552 F. App'x 140, 149 (3d Cir. 2014) (citing *Sempier v. Johnson & Higgins*, 45 F.3d 724, 734 (3d Cir. 1995)), and they establish deadlines for the same "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. As this Court previously demonstrated, discovery disputes are no different:

---

[2]  The Court takes judicial notice of Plaintiff's status as this information is "publicly available on [a] government website." *Vanderklok v. United States*, 868 F.3d 189, 205 (3d Cir. 2017); *see also Lemmons v. Doe*, No. 1:20-CV-00328 (ERIE), 2021 WL 1872954, at *1 (W.D. Pa. Mar. 11, 2021) (collecting cases).

> "[T]his Court fully promotes the meet and confer process as an efficient means to resolve discovery disputes" and/or to narrow such disputes before they are presented to the Court. *Volkay v. Ct. of Common Pleas of Allegheny Cnty.*, Civ. A. No. 14-193, 2015 WL 6824024, at *1 (W.D. Pa. Nov. 6, 2015). As this Court has held repeatedly, "if a party feels that it has not received disclosures or discovery responses to which it claims it is entitled, it should first meet and confer in person or by telephone in an attempt to resolve the issue, and if that does not resolve the dispute, reach out to the Court by requesting a status conference or filing a motion to compel." *Vay v. Huston*, Civ. A. No. 14-769, 2016 WL 1408116, at *15 (W.D. Pa. Apr. 11, 2016).

*Pletcher v. Giant Eagle Inc.*, No. CV 2:20-754, 2022 WL 3700912, at *6 (W.D. Pa. Aug. 26, 2022).

Rule 29(b) permits counsel to stipulate to an extension for discovery responses, "but a stipulation extending the time for any form of discovery must have court approval if it would interfere with the time set for completing discovery[.]" Fed. R. Civ. P. 29(b). As such, this Court has previously held that discovery is untimely when it is served at a such a point that the opponent has insufficient time to respond prior to the close of discovery. *See Samuel, Son & Co., Inc. v. Beach*, Civ. A. No. 13-128, 2014 WL 5089718, at *2 (W.D. Pa. Oct. 9, 2014); *see also Practices and Procedures of Judge Nora Barry Fischer* § III(B)(5) (Feb. 16, 2022) ("Discovery requests must be served soon enough that responses are due within the discovery period."). Hence, discovery motions seeking to enforce requests which were untimely served may be denied. *See Surman v. UPMC*, Civ. A. No. 17-184, Docket No. 53 (W.D. Pa. Nov. 22, 2017).

It is also well established that after the discovery period has closed, it may be reopened only upon a showing of good cause. *See Samuel, Son & Co., Inc.*, 2014 WL 5089718, at *3 (citing *Pritchard v. Dow Agro Scis.*, 255 F.R.D. 164, 175 (W.D. Pa. 2009) and Fed. R. Civ. P. 16(b)(1)(4)). "To establish 'good cause' in this context, the party seeking an extension should

show that more diligent pursuit in discovery was impossible." *Id*. (citation omitted).  Therefore, a discovery motion is generally untimely if it is not brought before the close of discovery and objections to discovery which were not timely asserted in a motion to compel are waived.  *See Robinson v. UPMC*, Civ. A. No. 22-29, Docket No. 105 (W.D. Pa. Nov. 9, 2023) (citing *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd*, Civ. A. No. 09-290, 2013 WL 772698, at *2 (W.D. Pa. Feb. 28, 2013) ("[m]otions to [c]ompel filed after the discovery deadline are untimely and prohibited, absent [a showing of] good cause.")).

As for producing documents during discovery, Rule 34 governs such requests between parties.  *See* Fed. R. Civ. P. 34(a).  Rule 34(a)(1) provides that the items sought must be "in the responding party's possession, custody, or control."  Fed. R. Civ. P. 34(a)(1).  If a party wishes to obtain documents from a nonparty, Rule 34(c) requires that such requests be served alongside a Rule 45 subpoena.  Fed. R. Civ. P. 34(c); *see also Krishanthi v. Rajaratnam*, No. 09-CV-05395, 2023 WL 5605565, at *6 (D.N.J. Aug. 30, 2023) ("Rule 34 requests for production may be served on a non-party only in conjunction with a Rule 45 subpoena.").

In some situations, a party may have to produce documents owned by a nonparty "if the producing party has either actual possession of the documents or control over documents not in its physical possession."  *In re Generic Pharms. Pricing Antitrust Litig.*, 571 F. Supp. 3d 406, 410 (E.D. Pa. 2021).  While actual possession means physical ownership, "control" encompasses the "legal right to obtain the documents requested on demand."  *Devon Robotics v. DeViedma*, No. 09-CV-3552, 2010 WL 3985877, at *2 (E.D. Pa. Oct. 8, 2010) (quoting *Gerling Int'l Ins. Co. v. Comm'r*, 839 F.2d 131, 140 (3d Cir. 1988)).  When a responding party is asked to produce his employer's records but his access to such documents is limited to the workplace, he does not exercise a level of "control" that would mandate production.  *See Love v. N.J. Dep't of Corr*.,

No. 2:15-CV-4404-SDW-SCM, 2017 WL 3477864, at *5 (D.N.J. Aug. 11, 2017). "The same applies to a government employee who 'cannot on his own initiative remove government files and provide them to a third party.'" Id. (quoting Lowe v. D.C., 250 F.R.D. 36, 39 (D.D.C. 2008)).

Some courts have held that the representation of a government employee by the Attorney General's Office establishes a sufficient "practical ability to obtain documents" from the department or agency employing them, "irrespective of whether the [officers] have any legal right to do the same." Love, 2017 WL 3477864, at *6; see also Golden Trade, S.r.L. v. Lee Apparel Co., 143 F.R.D. 514, 525 (S.D.N.Y. 1992) (collecting cases). Common factors courts consider include whether the state has the same interest in the outcome of the litigation and "the existence of any cooperative agreement" between the responding party and the state to provide access to its documents. Niblack v. Migilio, No. 2:16-CV-00747-MCA-SCM, 2018 WL 1003266, at *3 (D.N.J. Feb. 21, 2018).

That said, courts appear to agree that absent evidence to the contrary, *former* government employees "do not have possession, custody, or control of documents held by their former employers," even though it is "theoretically possible" that such documents remain in their possession. Lowe, 250 F.R.D. at 39; see also Bryant v. Armstrong, 285 F.R.D. 596, 607 (S.D. Cal. 2012) ("Armstrong cannot be compelled to produce documents from an agency that previously employed her when the records are not in her custody, possession, or control."). Overall, courts have "a responsibility to protect privacy and confidentiality interests" and are empowered "to fashion a set of limitations that allow as much relevant material to be discovered as possible . . . while preventing unnecessary intrusions into legitimate interests that may be harmed by the discovery of material sought." Corradi v. N. J. State Parole Bd., No. CV 16-5076

FLW-DEA, 2019 WL 1795545, at *1 (D.N.J. Apr. 24, 2019) (alteration in original) (citation omitted).

With respect to protective orders, Rule 26(c) permits "[a] party or any person from whom discovery is sought" to "move for a protective order," and for good cause shown, the Court may issue such an order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The burden of justifying the confidentiality of the "document sought to be covered" is "on the party seeking the order." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786–87 (3d Cir. 1994). To show good cause, the movant must demonstrate "that disclosure will work a clearly defined and serious injury to the party seeking closure" and "[t]he injury must be shown with specificity." *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 924 F.3d 662, 673 (3d Cir. 2019) (alteration in original) (quoting *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984)). Likewise, "the use of [Attorney's Eyes Only] designations often is limited to cases where a party has demonstrated good cause for the designation by articulating concrete and specific harms that would result from de-designation." *Jeddo Coal Co. v. Rio Tinto Procurement (Singapore) PTD Ltd.*, No. 3:16-CV-621, 2018 WL 1635153, at *3 (M.D. Pa. Apr. 5, 2018) (citations and internal quotation marks omitted). As one court observed:

> "In general, courts utilize 'attorneys' eyes only' protective orders when especially sensitive information is at issue or the information is to be provided to a competitor." *Westbrook v. Charlie Sciara & Son Produce Co., Inc.*, No. 07–2657, 2008 WL 839745, at *4 (W.D.Tenn. Mar.27, 2008) (citing cases). *See also Arvco Container Corp. v. Weyerhaeuser Co.*, No. 1:08–CV–548, 2009 WL 311125, at *5 (W.D.Mich. Feb.9, 2009) ("To be sure, courts in many circumstances have found that a specific showing of competitive harm justifies a restriction of confidential or trade secret information to 'attorney's eyes only.'"). The party moving for the restrictive AEO designation must detail the alleged harm it is likely to suffer absent the requested protection "with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory

statements." *Nemir v. Mitsubishi Motors, Corp.*, 381 F.3d 540, 550 (6th Cir. 2004) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981)). In determining whether good cause exists for an AEO designation, courts must balance "the difficulties imposed upon plaintiff against the need to protect information from abuse by competitors." *Arvco Container*, 2009 WL 311125, at *6.

*U.S. ex rel. Daugherty v. Bostwick Lab'ys*, No. 1:08-CV-354, 2013 WL 3270355, at *2 (S.D. Ohio June 26, 2013).

    b. Analysis

In light of the facts and circumstances, including the procedural posture of this case, the Court believes that the relevant terms of Defendant's proposed confidentiality agreement place reasonable limitations on the disclosure of the PBPP's confidential policy to Plaintiff. Notably, the agreement provides exemptions for ADR, the stage where this litigation is, and ultimately trial. It also establishes procedures by which Plaintiff's counsel may request access for his client. With that said, Defendant will only be required to disclose those portions[3] of the R&C Policy relevant to Plaintiff's excessive force claims to counsel. In addition, Plaintiff will be permitted to review the R&C Policy, but only when he is in the presence of his counsel, and he will not be permitted to possess any copies, extracts, or summaries thereof. Finally, Plaintiff and his counsel are prohibited from using the R&C Policy for any purpose beyond this lawsuit. Hence, the Court determines that Defendant's request for a blanket AEO designation is not only overbroad, but inconsistent with terms proposed in the agreement. The Court reaches this decision on both procedural and substantive grounds.

Procedurally, Plaintiff's discovery requests were undoubtedly late as he served them on Defendant less than a week before discovery was originally set to close. *See Samuel, Son & Co.,*

---

[3] The specific sections of the R&C Policy which shall be produced are enumerated in Exhibit 1 attached to the Court's accompanying Order.

11

*Inc.*, 2014 WL 5089718, at *2.  Although the discovery deadline was eventually extended, the reset deadline did not provide Defendant "sufficient time to respond" as his responses were not served until February 16, 2024.  *See id.*  Moreover, once the 30-day discovery extension was granted on January 4, 2024, the parties should have sought Court approval to modify Defendant's response deadline past the close of fact discovery.  *See* Fed. R. Civ. P. 29(b).  Since no such enlargement was sought, Defendant's objections and the present motion are also untimely.  *See Robinson*, Civ. No. 22-29, at Docket No. 105.  Therefore, it would be well within this Court's discretion to deny the present motion because it was brought over two weeks after fact discovery closed and nearly six months after counsel first indicated at the initial case management conference that a confidentiality order may be necessary.  (Docket No. 22); *see also* Nestle Foods Corp. v. Aetna Cas. & Sur. Co., 129 F.R.D. 483, 487 (D.N.J. 1990) (considering, *inter alia*, the untimeliness of Defendant's Rule 26(c) motion as a factor for denying it).

Yet, Defendant's late responses were due, at least in part, to his counsel's willingness to serve as an intermediary between the PBPP and Plaintiff.[4]  The Court is also mindful of the "the importance of discovery in the successful prosecution of civil rights complaints," because plaintiffs often face "informational disadvantages" and can develop their case only through discovery of materials held by government officials.  Alston v. Parker, 363 F.3d 229, 232 (3d Cir. 2004).  As such, the Court believes some leniency might be due and therefore finds it appropriate to look beyond Defendant's untimely request for relief and instead substantively evaluate it; the Court's assessment follows.

---

[4]  The Court certainly appreciates that counsel worked cooperatively to expedite discovery in character with the Local Rules of Court and this Court's Practices and Procedures.  *See* LCvR 16.B.5; *Practices and Procedures of Judge Nora Barry Fischer* § II.N. (Feb. 16, 2022).  While the meet and confer process is an efficient method to resolving discovery issues, counsel may not use this process to unilaterally alter the Court's discovery deadlines. *See* Fed. R. Civ. P. 29(b).

Here, Plaintiff asked Defendant, a former parole agent, to produce the confidential policy of a governmental agency that previously employed him. (Docket No. 55-2 at 30, 34). Plaintiff also knew that Defendant was no longer a parole agent when he made his request as he did so nearly three weeks after Defendant testified as much at his deposition. (Docket No. 55-3 at 11:18–23). As the PBPP is not a party here, Plaintiff could have sought the R&C Policy more directly from the PBPP through a Rule 45 subpoena, a 30(b)(6) deposition, or a RTKL request early in this litigation.

The Court recognizes that defense counsel from the Attorney General's Office ultimately demonstrated a "practical ability to obtain" the R&C Policy from the PBPP. *See Love*, 2017 WL 3477864, at *5. The defense's ability to "control" the R&C Policy through any type of "cooperative agreement" with the state is limited, however, by the PBPP's interest in maintaining its confidentiality. If a current parole agent "cannot on his own initiative" provide the R&C Policy to a third party, then the same must be true for a *former* parole agent. *See Lowe*, 250 F.R.D. at 39. Defendant's limited ability is reflected in his discovery responses; he directed Plaintiff to "contact the PBPP for a copy of *their* policies," (Docket No. 55-2 at 14, 17, 19) (emphasis added), and objected to Plaintiff's request to produce the R&C Policy as it is "confidential" and "cannot be released without a confidentiality agreement." (*Id*. at 37–38, 43).

While a former parole agent may not individually suffer a "clearly defined and serious injury" if the R&C Policy is produced to Plaintiff without any measures in place to preserve its confidentiality, this factor must be balanced against the fact that neither does he exercise sufficient "control" over the R&C Policy such that Plaintiff can request unrestricted production from him. *See Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984) ("Good cause is established on a showing that disclosure will work a clearly defined and serious injury to

13

the party seeking closure."). Hence, the PBPP's interest in maintaining the confidentiality of the R&C Policy—the safety of the parole agents in the field—must be weighed. *See Corradi*, 2019 WL 1795545, at *1. To that end, courts have held that analogous materials, such as DOC training manuals and use of force policies, are "routinely protect[ed]" from incarcerated litigants "based on prison safety and security concerns." *Bracey v. Valencia*, No. CV 19-1385, 2021 WL 5827373, at *4 (W.D. Pa. Dec. 8, 2021).[5]

Accordingly, the Court believes that the terms of the proposed confidentiality agreement are generally reasonable. To the extent that Defendant references or requests an AEO designation, the carveouts in the agreement suggest a less restrictive level of protection than the one contemplated by this legal term of art, *see Daugherty*, 2013 WL 3270355, at *2, particularly at this stage of the litigation. Although Defendant's agreement would restrict Plaintiff from accessing the document altogether, the Court believes that redacting the policy and narrowing Plaintiff's access are sufficient safeguards in this instance. As it is this Court's understanding that Plaintiff is currently under the PBPP's supervision as a parolee, he shall only be permitted to review the R&C Policy in the presence of his counsel and no copies, extracts, or summaries thereof shall be furnished to him. Further, as included in the proposed agreement, the parties will not be precluded from using the R&C Policy at ADR.[6] (Docket No. 55-7 at 3). Given that

---

[5] As the Court stated at oral argument, the CLEAR Commission published two reports in 2022 which provided detailed insights on portions of the R&C Policy, including taser deployments and the resistance and control continuum. *See* Docket No. 54 at 24:8-14; *see also* Final Report, Internal Case No. 21-0015-P, Pa. CLEAR Comm'n. (Oct. 28, 2022); Final Report, Internal Case No. 21-0005-P, Pa. CLEAR Comm'n. (May 13, 2022). Both reports are publicly available at: https://prdosig.pwpca.pa.gov/Reports/PSLECAC/Pages/default.aspx. That said, the court in *Bracey* encountered a similar situation when an incarcerated plaintiff sought the DOC's training manuals and use of force rules and procedures. The *Bracey* court found that the DOC's general guidelines for the use of force were publicly available and granted access to only those portions. *See Bracey*, 2021 WL 5827373, at *4. Similarly, this Court considered the contents of the foregoing public reports when weighing the PBPP's interest and determining the scope of Plaintiff's access.

[6] The Court interprets "mediation" to broadly apply to any ADR process the parties select, which is consistent with this District's confidentiality requirement under its ADR Policies and Procedures. *See* U.S. District Court, Western District of Pennsylvania, ADR Policies and Procedures, *available at*:

14

Case 2:23-cv-00553-NBF   Document 56   Filed 05/24/24   Page 15 of 15

discovery is closed, and the ADR session will be rescheduled following the entry of this Order, the Court does not anticipate that Plaintiff's restricted access will significantly constrain his ability to use the R&C Policy during the ADR session and any future stage of this litigation. In sum, it is a "set of limitations," which allows Plaintiff to discover and use "as much relevant material . . . as possible," while also "preventing unnecessary intrusions" into the PBPP's legitimate safety and security interests. *See Corradi*, 2019 WL 1795545, at *1.

Finally, the Court need not presently address the question of public access unless the R&C Policy becomes a judicial record, at which point "a presumption of access attaches," and it will be up to the Court to evaluate the appropriate factors to determine whether the policy should be sealed, in whole or part, or filed publicly, at that time. *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019).

## IV. Conclusion

The Court finds that the facts and circumstances favor upholding much of the proposed confidentiality agreement. Defendant's motion seeking a protective order is granted to the extent that a redacted copy of the R&C Policy shall be disclosed to Plaintiff's counsel subject to the confidentiality agreement, as amended by the Court, limiting Plaintiff's access to the policy to when he is physically in the presence of his counsel and authorizing both parties use of same during ADR and any future stages of this litigation. Defendant's motion is denied in all other respects. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Dated: May 24, 2024
cc/ecf: counsel of record

---

https://www.pawd.uscourts.gov/sites/pawd/files/ADR_Policies_and_Procedures_21.pdf. Per § 6, "the contents of all documents and communications during the ADR process are confidential, as statutorily mandated by 28 U.S.C. § 652(d)." *E.E.O.C. v. U.S. Steel Corp.*, 877 F. Supp. 2d 278, 293 (W.D. Pa. 2012).